UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                              }
                                    }
LEROY SMITH,                        }        Case No. 12-40496-JJR
                                    }        Chapter 7
            Debtor.                 }

## OPINION AND ORDER

This chapter 7 case was commenced on March 16, 2012, and on April 24, 2012 it came before the Court for a hearing on (1) the Court's Order to Show Cause why the case should not be dismissed because the Debtor was not eligible for a discharge under chapter 7 of the Bankruptcy Code and (2) the Debtor's Motion to Convert Case From Chapter 7 to Chapter 13 (Docs. 11, 17).[1]

Jurisdiction:

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2); therefore the Court may enter a final order.

Background and Findings:

This is the Debtor's tenth bankruptcy case. All previous cases were filed under chapter 13, and all except the last were dismissed without a discharge; the last case, filed May 25, 2007,

---

[1] Unless otherwise indicated, references to the "Bankruptcy Code" or "Code" are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* The symbol "§" is a reference to a section, subsection, or other subdivision of the Code. References to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

1

concluded with a discharge granted July 28, 2011. Because the Debtor received a discharge pursuant to § 1328(a), and less than six years lapsed before the instant chapter 7 case was commenced, he is not eligible for a chapter 7 discharge. Code § 727(a)(9) prohibits a debtor from receiving a discharge under chapter 7 if he was previously discharged in a chapter 13 case that was filed less than six years before the chapter 7 case.[2] Although the same law firm represented the Debtor in the last chapter 13 case which concluded with a discharge, Debtor's counsel claimed he overlooked his client's ineligibility for a chapter 7 discharge, and to remedy the situation, filed a motion seeking to convert this case to chapter 13. Ordinarily, the Debtor would be eligible for another chapter 13 discharge under § 1328(f)(2) because more than two years separate the respective petition dates of the instant case and the previous chapter 13 case in which a discharge was granted.

At the hearing on the Order to Show Cause and the Motion to Convert, the Court inquired about two matters of concern that were gleaned from the Debtor's schedules. First, the dates on which debts were incurred were not fully completed for all claims listed on Schedules D and F. Second, Schedule J disclosed that the Debtor had net monthly income of only $13.39, which left the impression that he would not have sufficient income to fund a viable chapter 13 plan post-conversion. No proposed plan has been filed, and the second matter of concern – whether there is sufficient income to fund a plan – might be better addressed after a plan is proposed and considered for confirmation; however, this case will not make it that far.

During the hearing, the Court instructed Debtor's counsel that Schedules D and F should be amended to disclose the full date each debt was incurred – in other words, comply with the instructions on the Official Forms. The Court has frequently admonished attorneys (including

---

[2] Code § 727(a)(9) provides certain exceptions to the 6-year rule, neither of which is applicable to this Debtor.

2

Case 12-40496-JJR7    Doc 24    Filed 05/24/12    Entered 05/24/12 10:54:27    Desc Main
Document      Page 2 of 10

Debtor's counsel, on several occasions) that all information required in the schedules must be provided for all debtors in all cases; in this Court, incomplete and inaccurate schedules are simply not acceptable.[3]

On April 30, 2012 the Debtor filed amended Schedules D and F (Doc. 23, and herein the "Amended Schedules"). As with the original schedules, the Debtor confirmed under penalty of perjury that the Amended Schedules were true and correct. (Doc. 23.) The Amended Schedules were attached to a pleading entitled "Amended Petition" signed by Debtor's counsel, in which she made the following statement:

> Comes now the Debtor(s) by and through the attorney of record . . . , and respectfully requests this Honorable Court to amend the Chapter 13 petition as shown in the attached Schedule D, Schedule F (dates debt incurred ONLY) and Summary of Schedules.

Doc. 23 (emphasis in original).

Notwithstanding counsel's statement to the contrary, the Amended Schedules did more than add dates on which debts were incurred; they disclosed two additional purchase-money

---

[3] The Court does not "fly-speck" schedules in all cases, but when a case like this one comes before the Court – a case by a serial filer who is not eligible for a discharge – the schedules are carefully reviewed for accuracy and completeness. In this case, the years in which debts were incurred were listed in the original schedules, but not the days and months. If a debt was incurred several years ago, and not during an active case, the day and month might not be significant, and the year alone will suffice. However, the exact days and months in this case, and similar cases, are important because such information will disclose whether the debts were incurred during a previous case or soon after a discharge was granted. Loading up on additional debts during an active chapter 13 case, or shortly after discharge, is an indication that good faith might be lacking if a subsequent case is filed soon after discharge; such were the circumstances in this case.

The law firm representing the Debtor in this case is a repeat offender when it comes to incomplete and inaccurate schedules despite frequent requests and warnings by the Court. The omission of the complete dates for when the Debtor's debts were incurred appears to be intentional, especially in light of the Court's previous admonishments directed at Debtor's counsel to provide this information in other similar cases.

3

secured claims.[4] One, for a gas trimmer, was incurred on March 17, 2011 during the previous chapter 13 case; and the other, for an Xbox computer game, was incurred December 12, 2011, less than five months after the Debtor's chapter 13 discharge and three months before the instant case was filed.

Recall, this is the Debtor's tenth case; all except the instant case were chapter 13 cases, and he now seeks to convert this case to 13 for no other reason than he is not eligible for a discharge under chapter 7. And except for the last case, all previous chapter 13 cases were dismissed, usually after a short duration. From late 1992 through 1998, the Debtor was in an active chapter 13 case more than he was not. Then there was a hiatus until May 2007 when he filed his ninth chapter 13 case, and it concluded with a discharge in July 2011.[5] Alas, one would have hoped that having snatched the gold ring of discharge after nine attempts over a span of almost 20 years, the Debtor would have avoided incurring excess debt. Unfortunately, it was not to be. By incurring discretionary debts during his last case and soon after its conclusion, the Debtor squandered his financial fresh start that took him so many years to achieve.

During his "successful" chapter 13 case, the Debtor's Amended Schedules reveal that he incurred purchase-money secured debts to acquire living room furniture and the aforementioned gas trimmer. During that case, he also incurred and left unpaid a substantial phone bill and propane gas bill. Soon after receiving a discharge, the Debtor incurred purchase-money secured debts for the aforementioned Xbox computer game, as well as an air conditioner, stove, and

---

[4] The Amended Schedules also changed, or included for the first time, the amounts owing on several claims and amended some of the dates shown on the original schedules. At a minimum, all of these changes reveal that the original schedules were haphazardly prepared. It should also be noted that neither of the two items of personal property acquired with the purchase-money debts and disclosed for the first time on the Amended Schedules was listed on Debtor's Schedule B – Personal Property.

[5] In his last chapter 13 case, the Debtor paid a priority claim of $19,191 for delinquent child support; a $2,500 attorney fee; and a 15% dividend to general unsecured creditors.

laptop, and pledged his only automobile to secure a $4,480 loan. Additionally, after his discharge, he incurred unsecured debts for payday and finance company loans, a credit card, a bank loan, and debts for cell phone and satellite TV services. He also incurred a hospital bill of $1,000. The 18 debts incurred either during the previous chapter 13 case or during the few months between discharge and filing of the instant case, total $14,431.62. But it is not necessarily the amount of total debt or even the number of creditors that is of concern. What is most troubling are the several factors that point to the lack of good faith, if not actual bad faith, on the part of the Debtor: (1) the large number and short duration of the Debtor's failed chapter 13 cases; (2) incurring discretionary debts during the previous chapter 13 case and soon after discharge (e.g., purchase-money financing to acquire furniture, a trimmer, a computer game, and a laptop); (3) making an ostensibly "naive" attempt at gaining a chapter 7 discharge after a mere eight months following a chapter 13 discharge; (4) filing inaccurate and incomplete schedules; and (5) misrepresenting to the Court that the Amended Schedules "ONLY" amended the dates claims were incurred.

Factors (3) and (5), and perhaps factor (4), are more attributable to counsel than to the Debtor himself. But regardless of who was at fault, and whether or not intentional, at best they reflect a haphazard and casual attitude about the importance of accurate and complete bankruptcy schedules that cannot be ignored. Putting aside for a moment the Debtor's serial and probably abusive bankruptcy filings, if this case had been originally filed under chapter 13, and the petition and schedules had appeared on their face to be fully completed (whether or not accurately), the deficiencies most likely would never have come to the Court's attention, and the original schedules, omitting two secured claims and containing inaccurate dates and amounts, would not have been discovered. Whether the Court would have confirmed another chapter 13

plan in light of the Debtor's serial filings, or because feasibility appears questionable, is beside the point; now the case is in an entirely different posture.

Conclusions:

Just how critical are accurate and complete schedules? Let's start with Bankruptcy Rule 1007(b), which provides:

> (1) Except in a chapter 9 municipality case, the debtor, unless the court orders otherwise, shall file the following schedules, statements, and other documents, prepared as prescribed by the appropriate Official Forms, if any:
>
> (A) Schedules of assets and liabilities . . . .

Official Forms 6D and 6F (Schedules D and F), conspicuously require the inclusion of the "DATE CLAIM WAS INCURRED" for each scheduled claim.[6] That date is important and may be telling. As mentioned, this Court, and it assumes other courts, are interested in knowing whether a debt was incurred shortly before a case was filed, whether the debtor went on a borrowing or credit-purchasing spree, and if so when, or perhaps whether the debtor was incurring discretionary debts during an active case or soon after receiving a discharge in a prior case. Exactly when debts were incurred may reveal much about a debtor's good faith and, with respect to a serial filer like the Debtor in this case, whether the bankruptcy process is being abused.

Bankruptcy Rule 1008 provides that "All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." Such a declaration was contained in a debtor's original Declaration Concerning Schedules, in which he "declare[d] . . . under penalty of perjury that the [information contained in the schedules] is true and correct." And with regard to an attorney representing a debtor, Bankruptcy Rule 9011(b) provides:

---

[6] Code § 521(a)(1)(B)(i) requires each debtor to file a schedule of assets and liabilities.

6

Case 12-40496-JJR7    Doc 24    Filed 05/24/12    Entered 05/24/12 10:54:27    Desc Main
Document      Page 6 of 10

> By presenting to the court . . . a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
>
> . . . .
>
> (3) the allegations and other factual contentions have evidentiary support . . . .

Similarly, the Code at § 707(b)(4)(C) and (D) provides that:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has –
>    (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
>    (ii) determined that the petition, pleading, or written motion –
>      (I) is well grounded in fact . . . .
>
> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

And finally, this Court has previously emphasized that if the bankruptcy process is to have credibility, schedules must be accurate and complete:

> Honesty and full disclosure are absolutely required for bankruptcy jurisprudence to function and have credibility among its participants and the public. Full disclosure in any bankruptcy case begins with accurate schedules, including a description of all the debtor's assets. Schedules are signed by debtors under penalty of perjury, and counsel signs bankruptcy petitions under the implicit representations of Rule 9011(b). The gauge for measuring the accuracy of bankruptcy schedules is not calibrated with the same tepid standard applicable to averments in a civil action complaint. Rather, bankruptcy schedules are representations of hard facts about which there should be little or no equivocation, and to the extent there is uncertainty, it should be explained.

*In re Bishop*, 2009 WL 348844, *3 (Bankr. N.D. Ala. 2009) (Robinson, J.).

Ordinarily, a debtor may convert his chapter 7 case to a case under chapter 13 at any time. § 706(a). Nonetheless, to convert from chapter 7 to chapter 13, a debtor must be eligible to be a debtor under chapter 13. § 706(d). To avoid immediate dismissal under chapter 13, a debtor's petition must not have been filed in bad faith. *See* Code § 1307(c) (dismissal of the case

for "cause," which may include bad faith or lack of good faith); *see also* § 1325(a)(7) (in order to confirm a plan, the petition must have been filed in good faith). And therein lies the problem with the Debtor's proposed conversion in this case.

In *Kitchens v. Georgia Railroad Bank and Trust Co.*, 702 F.2d 885 (11th Cir. 1983) the Eleventh Circuit explained the concept of "good faith" in the context of the Bankruptcy Code in general: "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal." *Kitchens,* 702 F.2d at 888 (approving and quoting 9 *Collier on Bankruptcy* ¶ 9.20 at 319 (14th ed. 1978)).

The Eleventh Circuit in *Kitchens* also set forth a nonexclusive list of factors that a bankruptcy court should consider when determining whether a chapter 13 debtor filed a proposed plan in good faith, and those factors are also useful in determining whether the petition itself has been filed in good faith, as well as determining the existence of bad faith. The factors most pertinent to this case are: "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; . . . the frequency with which the debtor has sought relief under the Bankruptcy [Code] . . .; [and] the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors . . . ." *Id.* at 889. The *Kitchens* court also noted a factor recognized by the Eighth Circuit: "the accuracy of the . . . statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court." *Id.*

The inaccuracies in the Debtor's schedules and the misrepresentation to the Court have been discussed. With regard to the other *Kitchens* factors, the Court concludes the Debtor was motivated to seek chapter 13 relief, not because of any sincerity in adjusting his debts, but simply

8

because his ineligibility for relief under chapter 7 had been discovered. The Debtor is a serial filer, having now filed ten cases under the Code, only one of which resulted in a discharge, and even that has now come back to haunt him. And most significant are the circumstances under which the Debtor contracted his debts: incurring discretionary debts during an active case and soon thereafter, quickly followed by another title 11 case, smacks of bad faith.

The Supreme Court, in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), rejected the right of a chapter 7 debtor to convert to chapter 13 pursuant to § 706(a) after having engaged in bad-faith conduct, such as filing misleading schedules. The Court reasoned that bad faith causes a chapter 7 debtor to forfeit his eligibility to convert to chapter 13 because the debtor would be subject to immediate dismissal under § 1307(c), thereby disqualifying him from conversion under § 706(d). Admittedly, the debtor's conduct in *Marrama* was more egregious than that of the Debtor in the instant case. Nonetheless, when all the factors discussed above are taken into account – the totality of the circumstances – the Court concludes that the Debtor, perhaps with counsel's complicity, not merely lacked good faith, but in fact filed his petition for relief and motion to convert in bad faith, and, therefore, is not eligible to become, for the tenth time, a chapter 13 debtor. "[T]he broad authority granted to bankruptcy judges to take any action this is necessary or appropriate 'to prevent an abuse of process' . . . is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 . . . ." *Marrama*, 549 U.S. at 375.

9

<u>Order</u>:

For the reasons stated above, it is hereby ORDERED that:

 ONE: the Debtor's Motion to Convert (Doc. 17) is DENIED;

 TWO: pursuant to the Court's Order to Show Cause (Doc. 11), this case is DISMISSED without prejudice;[7]

 THREE: all attorney fees received by Debtor's counsel and all expenses paid by the Debtor, including filing fees, shall be forthwith refunded or reimbursed, as the case may be, by counsel to the Debtor; and

 FOUR: within 14 days, counsel shall file a certification in the Court's electronic filing system (CM-ECF) maintained for this case, confirming such refund and reimbursement have been made as herein ordered.

So Done and Ordered: May 24, 2012

                /s/ James J. Robinson
                JAMES J. ROBINSON
                United States Bankruptcy Judge

---

[7] Should the Debtor file yet another chapter 13 case, it is plausible that, with more attentive representation by counsel, he may be able to demonstrate his bona fides and rid himself of the stigma of bad faith. This assumes, of course, that the new petition, schedules, and other disclosure requirements are accurate and complete. Assuming a new case is commenced within one year and the Debtor wishes to retain protection through the automatic stay, he will be required to file a motion pursuant to § 362(c)(3). At the hearing on such a motion, the Debtor will be required to prove changed circumstances and good faith, which will again raise issues regarding the discretionary debts incurred during his last case and soon thereafter. Perhaps the particulars with respect to the $1,000 hospital bill may support a finding a good faith and be sufficiently compelling to overcome the contrary finding reached in this opinion. In addition, the Debtor and his counsel are reminded of the requirement of feasibility for plan confirmation, which will be an issue should a new case progress that far. §1325(a)(6). The Debtor will need to prove hard facts that demonstrate an ability to make plan payments and a willingness to stay the course for the entire term of a proposed plan. Additionally, in light of comments by counsel at the hearing on dismissal and conversion, with respect to amounts listed on schedules I and J being subject to adjustment to fit the need of a particular chapter of the Code, the Debtor's income and budget will be more closely scrutinized to assure he has not "backed into" a budget that only superficially supports feasibility.